**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHIELD TECHNOLOGIES CORP., ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> PARADIGM POSITIONING LLC, ) </br> THOMAS W. NELSON, ) </br> JEFFREY D. VOLD, and ) </br> TRANSHIELD, INC. ) </br> ) </br> Defendants. ) </br> ) | Civil Action No: 11-cv-06183 </br></br> Judge John F. Grady </br></br> Magistrate Judge Arlander Keys |

**SHIELD TECHNOLOGIES CORP.'S REPLY IN SUPPORT OF ITS
MOTION TO STRIKE <u>AMENDED</u> AFFIRMATIVE DEFENSES AND
DISMISS <u>AMENDED</u> COUNTERCLAIMS OF JEFFREY D. VOLD**

Shield Technologies Corp. ("Shield") maintains that Defendant Jeffrey D. Vold's Counterclaims 1–3 should be dismissed and that each of Vold's thirteen remaining affirmative defenses should be stricken for the reasons set forth in Shield's motion and supporting memorandum (Docket Nos. 55, 56 (hereinafter, "Memorandum" or "Memo"). In addition to other identified deficiencies, Vold's conclusory allegations fail to meet the pleading standards of *Twombly* and Vold's counterclaims for tortious interference based on Shield's filing this suit are not recognized causes of action under Illinois law. For the reasons set forth below, Vold's Response (Docket No. 61) fails to rebut the arguments set forth in Shield's motion and opening Memorandum. Therefore, Shield respectfully requests that its motion be granted.

## DISCUSSION

**1.  Counterclaims 1–3 Should Be Dismissed.**

Vold does not dispute that Vold's Counterclaims 1–3 are based on three alleged wrongful acts:  filing a purportedly baseless lawsuit, authorizing or issuing press releases related to this lawsuit, and "questioning [Vold's] integrity, truthfulness and reliability."  (Pl. Memo. 4.)

To the extent those claims are based on the filing of this suit, they must be dismissed as a matter of law.  The Seventh Circuit has held, in accordance with Illinois law, that the filing of a lawsuit—even a baseless lawsuit, as Vold incorrectly asserts this to be—is not a cognizable basis for a tortious-interference claim:  "Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of America, Ltd. v. Hollobow,* 702 F. 2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw,* 56 372 N.E.2d 685, 690–91 (Ill. App. Ct. 1978)).

This principle has been appropriately recognized by numerous courts in this district. *See UTStarcom, Inc. v. Starent Networks Corp.*, No. 07 CV 2582, 2008 WL 5142194, at *2 (N.D. Ill. Dec. 5, 2008) (dismissing counterclaim for tortious interference as it relates to the filing of any lawsuit); *Junction Solutions, LLC v. MBS Dev, Inc.*, 06 C 1632, 2007 WL 4234091 (N.D. Ill. Nov. 20, 2007) (dismissing claims to the extent they rely on the fact that plaintiff filed a lawsuit); *PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*, 04 C 7232, 2005 WL 2347209 (N.D. Ill. Sept. 21, 2005) (dismissing claims for unfair competition based on filing a lawsuit and stating, "Courts applying Illinois law have repeatedly dismissed unfair competition claims based on the allegedly improper use of litigation as a means of competition.") (compiling cases); *WorldCom, Inc. v. Transcend Allegiance, Inc.*, 97 C 6150, 1998 WL 111636 (N.D. Ill. Mar. 6, 1998) (dismissing unfair-competition claim for failure to state a claim because "Under

Illinois law, the wrongful filing of a lawsuit can lead only to a malicious prosecution or an abuse of process claim"); *Doe v. Maywood Hous. Auth.*, 93 C 2865, 1994 WL 521050 (N.D. Ill. Sept. 22, 1994) (dismissing *pro se* claim which could be interpreted as a claim for wrongful filing of a lawsuit or malicious prosecution because the former is not recognized under Illinois law and the latter required the favorable termination of proceedings in the claimant's favor); *Helene Curtis Indus., Inc. v. Milo Corp.*, 84 C 5217, 1985 WL 1282 (N.D. Ill. May 2, 1985) ("Defendants' first counterclaim, however, does not state a cause of action for tortious interference with business opportunity because Illinois law prohibits such a cause of action to be based upon the wrongful filing of a lawsuit.").

Despite the Seventh Circuit's holding in *Havoco* and the numerous district court cases that follow it, Vold argues that Shield's position is "contrary to the case law." (Vold Resp. 6.) Vold's identified case law consists of only two cases. The first—which Vold incorrectly attributes to this Court (*see* Vold Resp. 6)—is *Cacique, Inc. v. Gonzalez*, No. 03 C 5430, 2004 WL 609278 (N.D. Ill. Mar. 26, 2004). The district court in that case denied plaintiff's motion to dismiss a counterclaim for tortious interference on the grounds that a competitor's privilege is not available to one who employs wrongful means. *Id.* at *2. Relying on a comment to the Restatement (Second) of Torts § 768 (1979), the court determined that civil suits qualified as wrongful means for purposes of an exclusion to the competitor's privilege. *Id.*

With little discussion, *Cacique* sought to distinguish *Havoco* on the basis that the plaintiff in *Havoco* never alleged malice or malicious intent in connection with the defendant's filing of a lawsuit and held that plaintiff's allegations of malice were sufficient to bring plaintiff's claims within an exception to the competitor's privilege. *Id.* at *3. But *Havoco* held—without exception—that a cause of action for tortious interference based on the filing of a lawsuit will not

lie in Illinois. Contrary to *Cacique*'s reasoning, the issue is not whether a maliciously filed lawsuit can be an exception to the competitor's privilege but whether a counterclaim for tortious interference (as opposed to, say, a claim for malicious prosecution) is a recognized vehicle for overcoming that privilege in any given case. *Havoco* unequivocally held that it is not.[1]

The only other case Vold cites in support of his position that he has a valid claim for tortious interference based on Shield's act of filing this suit is *Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.*, No. 95 C 1490 (N.D. Ill. Mar. 27, 1998). Without citing *Havoco*, that court denied a motion for summary judgment on a tortious-interference claim and held that filing a suit in bad faith for the purpose of inhibiting customer purchases was sufficient to destroy a competitor's privilege. *Id.* at *8. *Cacique* appears to be the only case in which a court has followed *Lynchval*, and this Court should decline to make this case the second. *Lynchval* is contrary to numerous district court cases and, more importantly, the Seventh Circuit's decision in *Havoco*. To the extent one can be liable for filing suit against a competitor, it is not by way of a suit for tortious interference—at least not in Illinois. Counterclaims 1–3 should be dismissed with prejudice to the extent they are based on Shield's filing this suit.

And to the extent Vold's Counterclaims 1–3 are based on actions other than the filing of this lawsuit, Vold failed sufficiently to allege any supporting facts. Vold's conclusory allegation that Shield has interfered with his relationships by questioning his integrity, truthfulness and reliability has no support in Vold's pleading, and Vold provides no further elaboration in his Response (not that such elaboration could cure a defective pleading). Shield has no notice of

---

[1] Moreover, *Cacique* relied in part on *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 542 (7th Cir. 1986), a case which addressed a claim for tortious interference under the common law of Indiana. *Id.* Vold's claim is premised on Shield's filing a suit in Illinois, and Vold agrees that Illinois law applies. (*See* Vold Resp. 6 ("Illinois Courts Permit an Action Based on the Filing of Shield's Baseless Lawsuit").)

what it did to question Vold's integrity or how those acts form the basis for Vold's tortious-interference claims. Therefore, to the extent Vold's claims are based on Shield's act of questioning Vold's integrity, truthfulness or reliability other than by filing this lawsuit, those claims should be dismissed as well.

That leaves only Vold's conclusory allegation that Shield has authorized or issued press releases relating to this lawsuit or Shield's purportedly baseless claims. In arguing that those allegations are sufficient to withstand a motion to dismiss, Vold fails to draw a proper distinction between evidence (which is not required at the pleadings stage) and supporting factual allegations showing an entitlement to relief (which are required at the pleadings stage).

The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 569 n. 14 (2007)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).

Shield is not suggesting that Vold must now come forward with evidence to maintain his claim that Shield interfered with Vold's relationships by issuing or authorizing false press releases, but Vold must at least allege that such press releases were issued to the public. Other than to allege that Shield, "authoriz[ed] on information and belief press releases containing false accusations against Vold relating to Plaintiff's baseless claims" (Counterclaims 1–2) or "issu[ed] press releases relating to the lawsuit to various media outlets," Vold does not allege that such press releases exist, and he certainly does not allege that any such press releases were issued to

the public. Thus, Vold's conclusory allegations do not plausibly suggest that Shield took any action that could have harmed Vold and that, consequently, could serve as a basis for liability.

Vold argues that he "adequately pled the elements required under Illinois law to maintain an action on the basis of this press release" and that "[d]iscovery will reveal the details, including the identity of the individuals who initiated the press release, the timing and the ultimate publication sources." (Vold Resp. 7.) Thus, Vold admits he has not alleged any supporting facts and submits that pleading the elements of a cause of action will suffice. It will not. *See Brooks*, 578 F.3d at 581 ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

Accordingly, Vold's First, Second, and Third Counterclaims should be dismissed. And to the extent they are based on Shield's filing this lawsuit, they should be dismissed with prejudice.

### 2. Shield Withdraws Its Motion to Dismiss Counterclaim 4.

For his Fourth Counterclaim, Vold claims that Shield misappropriated his identity in violation of the Illinois Right of Publicity Act, 760 ILCS 1075/30–55, by continuing to use Vold's identity on Shield's website after Vold resigned. Because Vold resigned on November 30, 2009, and did not file his right-of-publicity claim until November 3, 2011, Shield moved to dismiss the claim as untimely on its face based on the applicable one-year statute of limitations. (*See* Pl. Memo 5–7.)

In response, Vold agrees that his claim is subject to a one-year statute of limitations but asserts that he was engaged in over a year of active military service after resigning from Shield's

employ and that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 526, operates to toll the statute of limitations during all periods of active duty. (*See* Vold Resp. 8–10.)

Vold supports his argument with an affidavit filed as an exhibit to his response.[2] Although Shield does not accept Vold's position that all of the activities listed in his affidavit operate to toll the applicable statute of limitations or that the limitations period was triggered by Vold's resignation, Shield accepts that Vold has raised factual issues which render Shield's statute-of-limitations defense inappropriate for resolution on a motion to dismiss and withdraws its motion to dismiss Counterclaim 4, accordingly.

    **3.**    **Affirmative Defenses 1 and 4 Are Not Proper Affirmative Defenses.**

Vold's Response is silent as to Shield's argument that Affirmative Defense 1 (for failure to state a claim) and 4 (which merely duplicates Vold's misappropriation-of-identity counterclaim) should be dismissed with prejudice because they are not proper affirmative defenses. Accordingly, those affirmative defenses should be stricken with prejudice.

    **4.**    **Vold's Remaining Affirmative Defenses Do Not Meet the Applicable Pleading Standard.**

Regarding Vold's eleven remaining affirmative defenses, Vold asserts that Shield is applying the wrong standard. Vold relies primarily on a standard set forth in a 1982 district court case, *Bobbitt v. Victorian House Inc.*, 532 F. Supp. 734 (N.D. Ill. 1982), which Vold contends was adopted by the Seventh Circuit in *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989). *Bobbitt*'s proposed three-part test for examining affirmative defenses is as follows:

---

[2] Vold's affidavit is not signed, not notarized, and thus, not evidence. Shield respectfully requests that Vold be ordered to submit a proper affidavit or declaration but nonetheless accepts this exhibit insofar as it raises an issue of fact for purposes of this motion to dismiss, only.

> (1) Initially the Court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise.
>
> (2) If a matter may remain as an affirmative defense the Court will determine if it is adequately pleaded under the requirements of Rules 8 and 9. Any defense inadequately pleaded will be dismissed without prejudice to enable defendants to correct that technical deficiency.
>
> (3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b)(6). If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*Id.* at 737.

*Bobbitt* was cited favorably by the Seventh Circuit in *Heller* for the proposition that "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure" and "must set forth a 'short and plain statement' of the defense." *Heller*, 883 F.2d at 1294 (quoting Fed. R. Civ. P. 8(a) and *Bobbitt*, 532 F. Supp. at 736–37). The *Heller* court affirmed the dismissal of a number of affirmative defenses as "meritless . . . bare bones conclusory allegations . . . . [which] failed totally to allege the necessary elements of the alleged claims." *Id.* at 1295.

Vold argues that *Heller*'s citation to *Bobbitt* serves as an endorsement of that test and that the *Bobbitt* test remains the law of this circuit today. There are at least two problems with this argument. First, *Heller* did not discuss—or even mention—*Bobbitt*'s three-part test. And second, a reading of the entire *Bobbitt* test supports Shield's position that affirmative defenses are subject to the same 12(b)(6) standard applied to claims for relief.

In his Response, Vold quotes only one sentence in *Bobbitt*'s three-part test: "If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient." (Vold Resp. 11 (quoting *Bobbitt*, 532 F. Supp. at 737).) Although it is not cited in the opinion, *Bobbitt* obviously

-8-

relies on the then-prevailing pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Twenty-five years after *Bobbitt* was decided, however, *Conley* was expressly abrogated by *Twombly*. *See Twombly*, 550 U.S. at 562–63. It is undisputed that *Twombly*—not *Conley*—is the current pleading standard for purposes of Rule 12(b)(6). And *Bobbitt*'s test for affirmative defenses expressly provides that "[a]ny matter permitted to stand as an affirmative defense will be tested under a standard *identical to Rule 12(b)(6)*." *Bobbitt*, 532 F. Supp. at 737 (emphasis added). Thus, *Bobbitt*'s test remains the same: matters properly set forth as affirmative defenses will be evaluated to see if they are adequately pleaded pursuant to Rule 8 and tested under the identical standard as to which claims are subjected under Rule 12(b)(6). What has changed, however, is the standard that court's apply for purposes of Rule 12(b)(6). *Twombly* is the standard, and Vold's affirmative defenses fail to meet it.

      Vold cites instances in which courts in this District have quoted the "impossible for defendants to prove a set of facts" language along with the rest of the test set forth in *Bobbitt*, but none of those cases actually applied that standard over a *Twombly* standard to deny a motion to strike an affirmative defense. *See Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, 732 F. Supp. 2d 809, 815, 822–24, 828 (N.D. Ill. 2010) (quoting the three part test under a "Legal Standards" heading but denying the motion to strike various affirmative defenses on other grounds); *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (granting motion to strike affirmative defenses that "fail to point to specific allegations in the pleadings that satisfy the essential elements of either defense"); *Persis Int'l, Inc. v. Burgett, Inc.*,

No. 09 C 7451, 2011 WL 4361544, at *2 (N.D. Ill. Sept. 19, 2011) (quoting the *Bobbitt* standard but striking every challenged affirmative defense except statute-of-limitations defense).

Moreover, as explained in Shield's opening Memorandum, it has recently been observed that a majority of courts in this district and others have logically applied the *Twombly* standard to a motion to strike affirmative defenses:

> Although the Seventh Circuit has yet to address whether the same standards [i.e., *Twombly*] apply to pleading affirmative defenses, the majority of courts both in this and other districts have found that it does, *see Riemer v. Chase Bank USA, N.A.,* No. 10 C 6150, 2011 WL 2110242, at *2 (N.D. Ill. May 25, 2011) (listing cases), and this court agrees.

*Massenberg v. A&R Security Services, Inc.*, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011). For the reasons set forth in Shield's Memorandum, Shield maintains that Vold's affirmative defenses are insufficiently pled and that they should therefore be stricken.

**5.     Affirmative Defenses 5–7 and 13 Are Not Proper Affirmative Defenses.**

Furthermore, Vold's Affirmative Defenses 5–7 and 13 should be stricken with prejudice because they are mere denials of elements of Shield's claims, not affirmative defenses. Number 5 denies that the contract alleged against Vold is in force.  Number 6 denies that the information at issue in this lawsuit is confidential or constitutes trade secrets.  Number 7 denies an (alleged) element of Shield Technologies' claims, namely that Vold acted in bad faith. Number 13 denies that Vold committed any misappropriation of information, as alleged in the amended complaint, and denies that this information is "subject to trade secret protection."  Vold characterizes these four defenses as admitting Shield's allegations but alleging a legal excuse as to why Vold is not liable.  Shield disagrees.  Each of those defenses is based on the denial of a perceived element Shield would need to prove in order to prevail on its claims.  A denial is not an affirmative defense, and Vold already denied Shield's allegations in his answer.  (*See* Vold's Ans. ¶ 60 (denying that the Vold Employment Agreement is reasonable, valid, and binding on

Vold); ¶ 35 (denying that information Vold learned from Shield constitutes trade secrets); ¶ 67 (denying that Vold's actions were willful and malicious); ¶ 65 (denying misappropriation of trade secrets). Vold's affirmative defenses add nothing beyond Vold's denials. They constitute unnecessary clutter and should be stricken. *See Heller*, 883 F.2d at 1294 ("[W]here, as here, motions to strike remove unnecessary clutter from the case they serve to expedite, not delay.").

## CONCLUSION

With one exception, Vold has failed to refute the arguments set forth in Shield's motion to dismiss Vold's counterclaims and strike his affirmative defenses. Shield withdraws its motion to dismiss Counterclaim 4 but respectfully maintains its position that Vold's First, Second, and Third Counterclaims should be dismissed and that all of Vold's Affirmative Defenses should be stricken. Affirmative Defenses 1, 4–7, and 13 should be stricken with prejudice.

Dated: January 23, 2012            Respectfully submitted,

/s/ Uli Widmaier
PATTISHALL, McAULIFFE, NEWBURY,
  HILLIARD & GERALDSON LLP
David C. Hilliard (#1217496)
Uli Widmaier (#6226366)
Ashly Iacullo (#6289801)
Jeffrey A. Wakolbinger (#6297872)
311 S. Wacker Drive, Suite 5000
Chicago, Illinois 60606
Telephone: 312-554-8000

*Attorneys for Shield Technologies Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Shield Technologies Corp.'s Reply in Support of Motion to Strike <u>Amended</u> Affirmative Defenses and Dismiss <u>Amended</u> Counterclaims of Jeffrey D. Vold* was filed on January 23, 2012, via the Court's CM/ECF system, which will send notice to all attorneys of record.

/s/ Uli Widmaier