11-6183.121-RSK                                        September 19, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHIELD TECHNOLOGIES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 6183 |
| | ) | |
| PARADIGM POSITIONING, LLC, THOMAS | ) | |
| W. NELSON, JEFFERY D. VOLD, | ) | |
| TRANSHIELD, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court are the motions of plaintiff and counter-defendant Shield Technologies Corp. ("Shield") to dismiss the defendants' counterclaims and to strike their affirmative defenses. For the reasons explained below, we grant Shield's motions in part and deny them in part.

## BACKGROUND

Shield manufactures and sells corrosion protective covers for the United States and foreign militaries, industry, and consumer gun purchasers. (First. Am. Compl. ¶ 1.) The United States Department of Defense ("DOD") is Shield's largest customer. (Id. at ¶ 2.) Defendant Transhield, Inc. manufactures and sells "shrink wrap covers" for a range of applications and it is currently marketing its products to the DOD as an alternative to Shield's product. (Id. at ¶¶ 3, 5.) Shield alleges that two former Shield

- 2 -

executives, defendants Jeffery Vold and Thomas Nelson, and defendant Paradigm Positioning, LLC ("Paradigm"), their alter ego, have unlawfully disclosed Shield's trade secrets and other confidential information to Transhield. (Id. at ¶¶ 10, 15.) Shield's six-count complaint, which is the subject of a pending motion to dismiss, alleges: (1) breach of certain employment agreements executed by Nelson and Vold (Counts I (Nelson) and II (Vold)); (2) trade secret misappropriation (Count III); (3) tortious interference with a prospective business relationship (Count IV); (4) civil conspiracy (Count V); and (5) common law fraud (Count VI, against Nelson only). The defendants have filed various affirmative defenses and counterclaims in response to Shield's complaint. In general, the defendants allege that Shield has filed baseless claims against them in order to chill competition for the DOD's business. Transhield has filed a three-count counterclaim against Shield alleging: (1) tortious interference with its business relationship with the DOD (Count I); (2) tortious interference with its prospective business relationship with Vold (Count II); and (3) tortious interference with its contractual relationship with Vold (Count III). Nelson and Paradigm have jointly filed a nine-count counterclaim alleging: (1) abuse of process (Count I); (2) breach of contract (Counts II and III); (3) defamation (Count IV); (4) "interference with contract" (Count V); (5) "intentional interference with prospective

- 3 -

economic advantage" (Count VI); (6) violation of the Minnesota and Illinois employee-records statutes; (7) "injunctive relief" (Count VIII); and (8) Sherman Act violations (Count IX).  Vold has filed a four-count counterclaim alleging: (1) tortious interference with his "business relationship" with the DOD (Count I);[1] (2) tortious inference with his "current and prospective" business relationship with Transhield (Count II); (3) tortious interference with his contractual relationship with Transhield (Count III); and (4) "misappropriation of identity" under 765 ILCS 1075/30-55 (Count IV).  This last claim is based on Shield's alleged use of Vold's identity to market its products after Vold stopped working for the company on November 30, 2009.  (See Vold Counterclaim ¶ 23.)

## DISCUSSION

Shield has filed motions to dismiss the defendants' counterclaims and to strike their affirmative defenses.  We will discuss its Rule 12(b)(6) motions, and its Rule 12(f) motions, separately.

**A.  Shield's Motions to Dismiss Defendants' Counterclaims**

**1.  Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the

---

[1]  Count I his headed "Tortious Interference with Business Relationship with Transhield," but it is apparent that Count I is based on Shield's alleged interference with Vold's business relationship with the DOD.  (See Vold Counterclaim ¶ 5 (Alleging that "Vold has a valid business expectancy with his work with the DOD.")

- 4 -

merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. <u>Iqbal</u>, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

## 2. Nelson's and Paradigm's Counterclaims

Shield has moved to dismiss Counts I, IV, V, VI, VII, VIII, and IX of Nelson's and Paradigm's counterclaims.

### a. Count I: Abuse of Process

The court in <u>Reed v. Doctor's Associates, Inc.</u>, 824 N.E.2d 1198, 1206 (Ill. App. Ct. 2005) succinctly explained the parameters of abuse of process under Illinois law:

> In order to state a claim for abuse of process, the pleading must allege the existence of an ulterior purpose or motive <u>and some act in the use of legal process not proper in the regular prosecution of the proceedings</u>. The

mere institution of proceedings, even with a malicious intent or motive, does not alone constitute abuse of process. The test is whether process has been used to accomplish some end which is beyond the purview of the process or which compels the party against whom it is used to do some collateral thing that he could not legally and regularly be compelled to do. In other words, the defendant must have intended to use the action to accomplish some result that could not be accomplished through the suit itself.

Id. (internal citations omitted) (emphasis added). "Absent an 'inappropriate act' in the regular prosecution of a suit, an abuse of process action will not lie." Evans v. West, 935 F.2d 922, 923 (7th Cir. 1991). Shield argues, and we agree, that the defendants' counterclaim merely alleges that Shield filed its complaint with an "ulterior motive" (i.e., to chill competition), which is insufficient to state a claim for abuse of process. "The mere institution of a proceeding, even if brought simply to harass the other party or to coerce a settlement, does not constitute abuse of process." Harmon v. Gordon, 10 C 1823, 2011 WL 290432, *3 (N.D. Ill. Jan. 27, 2011); see also Evans, 935 F.2d at 923; (similar); Vasarhelyi v. Vasarhelyi, No. 09 C 2440, 2010 WL 1474652, *2-3 (N.D. Ill. Apr. 7, 2010) (similar). Nelson and Paradigm have made no attempt to distinguish the authorities that Shield has cited. Shield's motion to dismiss Count I of Nelson's and Paradigm's counterclaim is granted.

**b.   Count IV: Defamation**

Nelson and Paradigm allege that Shield has "willfully, wantonly and maliciously" published false statements about them.

(Nelson/Paradigm Counterclaim ¶ 25.) The examples they cite essentially mirror the allegations in Shield's complaint. They accuse Shield of falsely stating that the defendants (1) "stole" and "used" Shield's trade secrets, (2) committed fraud and breached their contracts with Shield, (3) "engaged in unlawful conspiracies," and (4) were "dishonest in their professional and business undertakings . . . ." (Nelson/Paradigm Counterclaim ¶ 25.) Shield has invoked the so-called "litigation privilege" in response to this claim: "anything said or written in a legal proceeding, including pleadings, is protected by an absolute privilege against defamation actions, subject only to the qualification that the words be relevant or pertinent to the matters in controversy." Defend v. Lascelles, 500 N.E.2d 712, 714-15 (Ill. App. Ct. 1986) (collecting cases). "The privilege is based upon the 'public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients.'" Kurczaba v. Pollock, 742 N.E.2d 425, 438 (Ill. App. Ct. 2000) (quoting Restatement (Second) of Torts, § 586, cmt. a). Anticipating that Shield would assert this privilege, the defendants allege on information and belief that the allegedly false statements "were published to others separate from or apart from this instant legal proceeding . . . ." (Nelson/Paradigm Counterclaim ¶ 25.) The defendants rely primarily on Punski v. Karbal, No. 07-C-5409, 2009 WL 196317, *5 (N.D. Ill.

- 7 -

Jan. 28, 2009), a case applying New York law,[2] in support of their argument that such statements are not privileged. The plaintiff in Punski attended two therapy sessions with the defendant, who held herself out as a licensed therapist. Id. at *1. The defendant later submitted a letter to an attorney representing the plaintiff's ex-wife in child custody proceedings that allegedly contained false statements about matters discussed during the plaintiff's therapy sessions. Id. at *1-2. The Punski court concluded that the letter itself was privileged because it was "at least pertinent to the [child-custody] litigation." Id. at *4. But it went on to hold that the plaintiff's defamation claim could proceed to discovery insofar as it was premised on the allegation that the defendant discussed the subject matter of the letter with the plaintiff's ex-wife prior to the litigation "and that [the defendant] made defamatory statements [to his ex-wife] outside the context of any lawsuit." Id. at *5.

Shield emphasizes that the defendants do not allege that Shield made allegedly defamatory statements "prior to" this lawsuit. While this is true, we do not believe that it is dispositive. The question is whether Shield made the allegedly defamatory statements "in a legal proceeding." See Defend, 500 N.E.2d at 714-15. The defendants allege that it did not, at least not exclusively. Shield cites Vasarhelyi, 2010 WL 1474652, at *3-4

---

[2/]  Shield has not cited any authority indicating that the privilege is applied differently under Illinois law.

for the proposition that "privileged statements made in litigation should not lose their protection by virtue of being communicated to persons not involved in the lawsuit." (Shield Mem. (Nelson/Paradigm) at 4.) In that case, the "alleged defamatory statements were contained in letters soliciting information pertaining to litigation pending in the state court, in which plaintiff had moved to intervene, and the proposed litigation in the instant action." <u>Vasarhelyi</u>, 2010 WL 1474652, *4. We do not know in what context, or for what purpose, Shield made the statements alleged in the complaint. However, the defendants are not required to anticipate and refute Shield's affirmative defenses in their counterclaim. See <u>Horowitz v. Animal Emergency and Treatment Centers of Chicago, LLC</u>, No. 12 C 2561, 2012 WL 3598807, *4-5 (N.D. Ill. Aug. 20, 2012) (a plaintiff is not required to anticipate a defendant's litigation-privilege defense). We conclude that the litigation privilege does not bar the defendants' defamation counterclaim at this stage of the case. See <u>id.</u> at *5 (concluding that a motion for summary judgment is the appropriate vehicle for asserting the privilege). Shield's motion to dismiss is denied as to Count IV of Nelson's and Paradigm's counterclaim.

    **c. Counts V and VI: Tortious Interference with Contract and Prospective Economic Advantage**

In Count V, Nelson and Paradigm allege that Shield tortiously interfered with the defendants' "direct[] and indirect[]" contractual relationships with the DOD "by commencing this lawsuit

and by publishing and republishing [] false information . . . ."
(Nelson/Paradigm Counterclaim ¶¶ 28-29.)  Shield argues that Count
V does not state a claim because the act of filing this lawsuit
cannot support a claim for tortious interference: "[u]nder Illinois
law, the only cause of action recognized for the wrongful filing of
a lawsuit is one for malicious prosecution or abuse of process."
Havoco of America, Ltd. v. Hollobow, 702 F.2d 643, 647 (7th Cir.
1983) (citing Lyddon v. Shaw, 372 N.E.2d 685, 690 (Ill. App. Ct.
1978)); see also UTStarcom, Inc. v. Starent Networks Corp., No. 07
CV 2582, 2008 WL 5142194, *2 (N.D. Ill. Dec. 5, 2008) (citing
Havoco and dismissing a counterclaim for tortious interference
insofar as it was based on the filing of a lawsuit).  The
defendants have elected to withdraw Count V, ostensibly because the
contract that is the subject of this claim "has not actually been
breached yet."  (See Nelson/Paradigm Resp. at 7-8.)  They argue,
however, that Count VI — alleging tortious interference with
prospective economic advantage — is valid.  First, it is clear that
the principle discussed in Havoco applies whether the alleged
interference involves an existing contract or a prospective
business relationship.  In their response to Shield's motion, the
defendants attempt to articulate alternative grounds for their
claim.  (Nelson/Paradigm Resp. 8-9.)  Defendants' response is
confusing and, as far as we can tell, not based upon the actual
allegations in its counterclaim.  Count VI is dismissed without
prejudice.

### d. Count VII (Unlawful Disclosure of Employee Records)

In Count VII, Nelson alleges that Shield unlawfully disclosed personnel file information without giving Nelson prior notice and an opportunity to review the materials. The defendants have withdrawn that claim, purportedly "without prejudice to their rights to represent them in the future." (Nelson/Paradigm Resp. at 9.) Shield asks us to dismiss Count VII with prejudice, but we do not believe that drastic remedy is warranted. The facts alleged in the defendants' counterclaim do not permit us to rule as a matter of law that the defendants cannot recover under the statutes they have cited.

### e. Count VIII: Injunctive Relief

The defendants have also voluntarily withdrawn Count VIII, (see Nelson/Paradigm Resp. at 9), tacitly acknowledging that an injunction is form of relief and not a distinct claim. See, e.g., CustomGuide v. CareerBuilder, LLC, 813 F.Supp.2d 990, 1002 (N.D. Ill. 2011). Shield again requests dismissal with prejudice. The defendants simply mislabeled a prayer for relief as a separate claim, a technical error that they have corrected by withdrawing Count VIII. Dismissal with prejudice is not warranted.

### f. Count IX: Antitrust Violations

In Count IX, the defendants allege that Shield has violated the Sherman Act, 15 U.S.C. §§ 2 and 15. Section 2 of the Act authorizes criminal sanctions against "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with

any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2. Section 15 authorizes private suits for damages by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15. Shield argues that the defendants' Sherman Act claim is barred by the <u>Noerr</u>-<u>Pennington</u> doctrine, which "extends absolute immunity under the antitrust laws to businesses and other associations when they join together to petition legislative bodies, administrative agencies, or courts for action that may have anticompetitive effects." <u>Mercatus Group, LLC v. Lake Forest Hosp.</u>, 641 F.3d 834, 841 (7th Cir. 2011). However, the doctrine does not apply to sham litigation instituted merely to harm a competitor, <u>see</u> <u>id.</u> at 842, which is what the defendants have alleged here. (<u>See</u> Nelson/Paradigm Counterclaim ¶ 43.) Moreover, the application of the doctrine is a question of fact that we will not resolve on a motion to dismiss. <u>See</u> <u>Wabash Pub. Co. v. Flanagan</u>, No. 89-C-1823, 1990 WL 19977, *3 (N.D. Ill. Feb. 27, 1990); <u>see also</u> <u>New West v. City of Joliet</u>, Nos. 05 C 1743, 07 C 7214, 11 C 5305, 2012 WL 366733, *6 (N.D. Ill. Jan. 30, 2012) ("Courts routinely reserve resolution of <u>Noerr</u>'s application for summary judgment.").

In the alternative, Shield argues that the defendants' claim is insufficiently pled. "In order to state a claim of monopolization, [the defendants] must plead '(1) the possession of

monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power.'" <u>In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation</u>, 767 F.Supp.2d 880, 901 (N.D. Ill. 2011) (quoting <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966)). The defendants argue, in essence, that Rule 8(a) does not require them to formally recite the elements of § 2 claim. But the real problem with their claim is that they have not alleged any facts corresponding to the elements of a § 2 claim, which requires more factual detail to state a claim for relief than run-of-the-mill commercial claims like breach of contract and the like. <u>See Swanson v. Citibank, N.A.</u>, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected."). Therefore, we grant Shield's motion to dismiss Count IX of Nelson's and Paradigm's counterclaim.

### 3. Shield's Motion to Dismiss Vold's Counterclaims

Shield has moved to dismiss all four counts of Vold's counterclaim.

### a. Counts I-III: Tortious Interference

Vold alleges that Shield interfered with his business interests by "filing this baseless lawsuit, questioning his integrity, truthfulness and reliability, and authorizing on

- 13 -

information and belief press releases containing false accusations against [him] relating to [Shield's] baseless claims . . . ." (<u>See</u> Vold Counterclaim ¶¶ 8 (Count I), 14 (Count II); <u>see also</u> <u>id.</u> at ¶ 20 (Count III) (alleging that Shield interfered with Vold's business interests "by filing this baseless lawsuit and issuing press releases relating to the lawsuit to various media outlets."). As we discussed previously, the filing of this lawsuit cannot support a claim for tortious interference. As Vold points out, the court in <u>Cacique, Inc. v. Gonzalez</u>, No. 03 C 5430, 2004 WL 609278, *3 (N.D. Ill. Mar. 26, 2004) reached a different conclusion.[3] The <u>Cacique</u> court reasoned that a claim for tortious interference could not be based on the allegation that the other party filed a baseless lawsuit, but could be based on the allegation that the suit was filed maliciously. <u>Id.</u> We see no basis for making an exception to rule recognized in <u>Havoco</u> for suits allegedly filed with malice. Indeed, such an exception would swallow the rule. If a plaintiff can plausibly allege that the defendant filed a baseless lawsuit, then he can also plausibly allege that the defendant did so "maliciously." The <u>UTStarcom</u> court, applying <u>Havoco</u>, dismissed a tortious-interference claim premised on the plaintiff's allegation that the defendant "filed with malicious intent three lawsuits . . . ." <u>UTStarcom</u>, 2008 WL 5142194, *2. We

---

[3]/ Vold also cites <u>Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc.</u>, No. 95 C 1490, 1998 WL 151814, *8 (N.D. Ill. Mar. 27, 1998). While <u>Lynchval</u> held that a lawsuit allegedly filed in bad faith supported claims for unfair competition and tortious interference, it did so without analyzing the issue presented here.

believe that <u>UTStarcom</u> is the better reasoned authority and respectfully decline to follow <u>Cacique</u>.[4]

Vold separately argues that his allegation that the defendants made false statements in press releases supports his claims for tortious interference. Shield effectively concedes that this allegation takes Vold's claim outside the policy discussed in <u>Havoco</u>, but argues that Vold's complaint is nevertheless insufficiently detailed to support a claim for relief. With respect to the press releases, it faults Vold for not alleging "who authorized them, to whom they were authorized, their subject matter, the dates of their releases, or their intended audience." (Shield's Mem. (Vold) at 4.) Essentially, Shield is attempting to hold Vold to the heightened pleading standard applicable to fraud claims. <u>See</u> Fed. R. Civ. P. 9(b). But Vold's tortious-interference claims, which are based upon Shield's alleged false statements about Vold, are more akin to defamation than fraud. <u>Cf.</u> <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7th Cir. 2007) (concluding that Rule 9(b) applied to the plaintiffs' tortious interference claims because they "sound[ed] in fraud"). We believe that there is sufficient detail in the complaint to support Vold's claims for tortious interference. Shield's motion to dismiss Counts I, II, and III of Vold's counterclaim is denied.

---

[4] The only case that has cited <u>Cacique</u> since it was published likewise rejected its analysis. <u>See</u> <u>Rubloff Development Group, Inc. v. SuperValu, Inc.</u>, --- F.Supp.2d ---, 2012 WL 1032784, *11 (N.D. Ill. Mar. 2, 2012).

- 15 -

**b.    Count IV: Illinois Right of Publicity Act**

Vold alleges that Shield continued to use his name and image to sell its product after he stopped working for the company.  See 765 ILCS 1075/30 (prohibiting a person from using "an individual's identity for commercial purposes during the individual's lifetime" without consent).  Shield argued in its opening brief that this claim is time-barred, but has withdrawn its motion to dismiss Count IV in light of contested facts about whether the statute of limitations was tolled during Vold's miliary service in 2010 and 2011.  (See Shield's Reply at 6-7); see also 50 App. U.S.C.A. § 526 (tolling statutes of limitation during military service).

**4.    Shield's Motion to Dismiss Transhield's Counterclaim**

Transhield's counterclaim is substantially similar to Vold's.  As we discussed supra, we believe that the allegation that Shield has made false statements against Transhield in press releases is sufficient to take its counterclaim outside the rule discussed in Havoco.  We also conclude, as we did with respect to Vold's counterclaim, that Transhield's allegations, while not as detailed as they might be, are sufficient to state a claim for tortious interference.  Shield's motion to dismiss Transhield's counterclaim is denied.

**B.    Shield's Motion to Strike the Defendants' Affirmative Defenses**

**1.    Legal Standard**

Rule 12(f) authorizes us to "strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). The parties disagree about how much factual detail the defendants must provide in their pleadings to support their affirmative defenses. In Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989), our Court of Appeals stated that "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. Thus, defenses must set forth a 'short and plain statement,' Fed.R.Civ.P. 8(a), of the defense." Id. (citing Bobbitt v. Victorian House, Inc., 532 F.Supp. 734, 736-37 (N.D.Ill. 1982)) (internal citations omitted). Applying Heller (and Bobbitt), courts in this District applied a three-part test to evaluate affirmative defenses: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge — in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient." Renalds v. S.R.G. Restaurant Group, 119 F.Supp.2d 800, 802-03 (N.D. Ill. 2000). As Vold and Transhield point out, some courts continue to apply this precise formulation even though the Supreme Court has since retired the "no set of facts" formulation of the Rule 12(b)(6) standard. See,

- 17 -

e.g., <u>Davis v. Elite Mortg. Services, Inc.</u>, 592 F.Supp.2d 1052, 1058 (N.D. Ill. 2009) (post-<u>Twombly</u> case applying, without analysis, the "no set of facts" formulation of the pleading standard to affirmative defenses). And in <u>Leon v. Jacobson Transp. Co., Inc.</u>, No. 10 C 4939, 2010 WL 4810600, *1 (N.D. Ill. Nov. 19, 2010), the court suggested several practical reasons for not applying <u>Twombly</u>'s "plausibility" standard to affirmative defenses. See <u>id.</u> (reasoning, for example, that the policy articulated in <u>Twombly</u> of avoiding nuisance lawsuits is inapplicable to affirmative defenses). However, <u>Leon</u> represents the minority view in this District. See <u>Champion Steel Corp. v. Midwest Strapping Products, Inc.</u>, No. 10 C 50303, 2011 WL 5983297, *2 n.2 (N.D. Ill. Nov. 28, 2011) (collecting cases).

Applying <u>Heller</u>'s reasoning, we believe that the test applicable to affirmative defenses should reflect current pleading standards, and therefore adopt the majority view that <u>Twombly</u> and <u>Iqbal</u> apply to affirmative defenses. We add, however, that there is not as much at stake in this question as the parties appear to believe. For many affirmative defenses, it is likely that the factual allegations that were sufficient before <u>Twombly</u> to support the defense will continue to be sufficient. See <u>Swanson</u>, 614 F.3d at 404 ("[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet [its pleading] burden than it was before the Court's recent decisions."). Even before <u>Twombly</u>, "bare bones" affirmative defenses did not pass muster.

- 18 -

Illinois Wholesale Cash Register, Inc. v. PCG Trading, LLC, No. 08
C 363, 2009 WL 1515290, *1 (N.D. Ill. May 27, 2009) (quoting
Heller, 883 F.2d at 1294-95).   Moreover, we have substantial
discretion when ruling on a Rule 12(f) motion.  See Riemer v. Chase
Bank, N.A., 275 F.R.D. 492, 494 (N.D. Ill. 2011).   It would be a
waste of scarce judicial resources to devote significant amounts of
time evaluating affirmative defenses that may not affect the scope
of discovery or the ultimate outcome of the case.   Accordingly,
even after Twombly, we think it is appropriate to resolve close
questions in the defendant's favor.  See id. ("It is only when the
defense on its face is patently frivolous or clearly invalid, that
Rule 12(f) requires that it be stricken.").  With these principles
in mind, we will evaluate each defendant's affirmative defenses.

### 2. Shield's Motion to Strike Nelson's and Paradigm's Affirmative Defenses

Nelson's and Paradigm's affirmative defenses are set forth in
two paragraphs.  The first paragraph asserts in omnibus fashion all
affirmative defenses available "at law:"

> The allegations of Plaintiff fail or are barred due to
> Plaintiff's illegality and unlawfulness (Please see
> Counterclaims, violation of federal antitrust laws,
> regarding 15 U.S.C. Section 2 of the Sherman Antitrust
> Act, and Abuse of Process; Counts I and IX among other
> provisions herein.), willful breaches of Contract;
> Statute of Frauds; fraud, unfair dealing, estoppel,
> failure of consideration, duress, laches, release,
> statues of limitations, waiver; and economic loss
> doctrine; and also fail due to other affirmative defenses
> as set forth in Rule 8(c)(1) of the Fed. R. Civ. P. or
> otherwise at law; which are hereby incorporated by
> reference.

- 19 -

(Nelson/Paradigm Answer at 51-52.) First, the defendants'
counterclaims are just that: claims, not recognized affirmative
defenses. Second, the defendants' "bare bones" list of every
possible affirmative defense is plainly deficient. See Ill.
Wholesale Cash Register, 2009 WL 1515290, *1. The second paragraph
of the defendants' affirmative defenses asserts that Shield filed
this lawsuit in bad faith:

> This action, moreover, is unlawfully commenced in bad
> faith, without the requisite due diligence, or upon false
> information supplied by Plaintiff Shield Technologies,
> Inc. and upon information and belief, Samuel Sax and
> Thomas Sax; to cause chill, fear, and outright harm to
> Defendant Thomas W. Nelson, a very responsible,
> respected, gracious person and American Citizen; and
> others.

(Nelson/Paradigm Answer at 52.) We agree with Shield that the
defendants are essentially asserting a Rule 11 violation in the
guise of an affirmative defense. See Fed. R. Civ. P. 11(b). The
court in Seehawer v. Magnecraft Elec. Co., 714 F.Supp. 910, 916
(N.D. Ill. 1989) held that "Rule 11 cannot by itself constitute an
affirmative defense." The court reasoned that Rule 11 "is more
along the lines of a denial of the claim, challenging the factual
or legal basis of the claim asserted, rather than an additional
basis for denying relief." Id.; see also Northlake Marketing &
Supply, Inc. v. Glaverbel S.A., No. 92 C 2732, 1993 WL 222532, *1
(N.D. Ill. June 18, 1993) (an affirmative defense admits what the
plaintiff has alleged, but nevertheless asserts that the defendant
is not liable; a party asserting a Rule 11 violation contends that

the complaint's allegations are not only untenable, but
sanctionable).   The defendants do not address <u>Seehawer</u> in their
response to Shield's motion, nor do they cite any legal authority
indicating that "bad faith" is a recognized affirmative defense to
the claims Shield has asserted.   Shield's motion to strike Nelson's
and Paradigm's affirmative defenses is granted.

Shield also asks us to strike the portion of the defendants'
answer that appears under the heading "Lack of Jurisdiction."
(Nelson/Paradigm Answer at 50-51.)   A party may assert lack of
personal jurisdiction in a responsive pleading, rather than by
motion.   <u>See</u> Fed. R. Civ. P. 12(b) and (h)(1); <u>see also</u> <u>Continental
Bank, N.A. v. Meyer</u>, 10 F.3d 1293, 1296-97 (7th Cir. 1993).   Shield
argues that the defense is meritless because it has alleged that
the defendants conduct business in Illinois and that Nelson (and
Paradigm, as Nelson's alleged alter ego) have submitted to this
court's jurisdiction by contract.   (<u>See</u> Shield's Mem.
(Nelson/Paradigm) at 14-15; Shield's Reply (Nelson/Paradigm) at 11-
12.).)   Shield is essentially attacking the merits of the
defendants' jurisdictional defense, not whether it has been
properly pled.   We do not believe that it would be appropriate to
decide that question at this time.   <u>See</u> <u>Riemer</u>, 275 F.R.D. at 494
("A motion to strike under Rule 12(f) is not a mechanism for
deciding disputed issues of law or fact, especially where, as here,
there has been no discovery, and the factual issues on which the
motion to strike largely depends are disputed.").   Shield's motion

to strike the "Lack of Jurisdiction" portion of Nelson's and Paradigm's answer is denied.

### 3. Shield's Motion to Strike Vold's Affirmative Defenses

Shield contends that each of Vold's affirmative defenses is deficient. We have previously held that failure to state a claim is not a true affirmative defense. See Ill. Wholesale Cash Register, 2009 WL 1515290, *2. As Transhield points out, there is a split of authority in this District on this question. See, e.g., Wylie v. For Eyes Optical Co., No. 11 CV 1786, 2011 WL 5515524, *2 (N.D. Ill. Nov. 10, 2011) (concluding that failure to state a claim may be asserted as an affirmative defense). However, the cases Transhield cites do not persuade us to abandon our earlier decision. Therefore, we will strike Vold's first affirmative defense. Vold asserts other affirmative defenses that are more properly characterized as denials of Shield's allegations: Shield's second affirmative defense (asserting that Shield is estopped from asserting its claims because Vold "is not restricted from competing against Plaintiff nor doing business with the Department of Defense"); fifth affirmative defense (denying breach of contract because the relevant contract terms had expired), sixth affirmative defense (asserting that the "vast majority of the information relied upon by Plaintiff in supports of its claims is public information . . ."), and thirteenth affirmative defense (asserting that Vold did not misappropriate any trade secrets). See, e.g., Allstate Ins. Co. v. Electrolux Home Products, Inc., No. 11 C 7494,

2012 WL 1108424, *1 (N.D. Ill. Apr. 2, 2012) ("A court may strike an affirmative defense that 'merely raises matters already at issue under a denial.'") (quoting <u>Bobbitt</u>, 532 F.Supp. at 736). Vold also asserts that Shield's claims "are barred in whole or in part because at all times Vold acted in good faith." (Vold's Answer at 23 (seventh affirmative defense).) We are not aware of any general affirmative defense of "good faith" that would defeat Shield's various claims. Similarly, Vold has not cited, nor are we aware of, any legal authority supporting his "unlawful prior restraint of trade" defense to Shield's claim for injunctive relief. (Vold's Answer at 23.) In his fourth affirmative defense, Vold essentially restates his Publicity Act claim as an affirmative defense. Again, we are not aware of any legal authority recognizing such a defense to the claims that Shield has asserted. With respect to Vold's remaining affirmative defenses, we agree with Shield that Vold has not pled sufficient facts to support these defenses. (<u>See</u> Vold Answer at 22-23 (affirmative defenses 3, 8, 9, 10, and 11.).) These are the sorts of "bare bones" affirmative defenses that were insufficient even before <u>Twombly</u>. In sum, we will strike all of Vold's affirmative defenses without prejudice.

### 4. Shield's Motion to Dismiss Transhield's Affirmative Defenses

Transhield's affirmative defenses suffer from many of the same defects as Vold's. The following "affirmative defenses" are not true affirmative defenses under the principles we have just

discussed: Transhield's first affirmative defense (asserting that Transhield did not act with a culpable state of mind),[5] third affirmative defense (failure to state a claim), seventh affirmative defense (asserting that Shield has not suffered damages), and tenth affirmative defense (asserting that Shield's allegedly confidential commercial information is not entitled to trade secret protection). Transhield's fourth (laches) and fifth (estoppel) affirmative defenses merely recite labels without pleading any facts suggesting how or why Transhield believes the defenses are applicable. Transhield's eighth affirmative defense asserts that the injunction Shield seeks "would constitute an unlawful prior restraint," but again, we are left to guess what Transhield's theory actually is. (See supra.) However, Transhield (unlike Vold) does suggest some basis for its unclean hands defense: the tortious interference that is the subject of its counterclaims. Shield argues that the counterclaim is improperly pled, (see Shield's Mem. (Transhield) at 7), and therefore the affirmative defense must fail also. But we have concluded otherwise. (See supra.) Also, Transhield's defense that Counts IV and V are preempted by the Illinois Trade Secrets

---

[5] Transhield also asserts in its first affirmative defense that it acted in "good faith." As we discussed in connection with Vold, we are not aware of any legal authority recognizing a general "good faith" affirmative defense. Indeed, from the context of Transhield's pleading, it appears that "good faith" is asserted merely to negate the mental state that Shield purportedly must prove to establish liability. Transhield cites Federal Practice and Procedure for the proposition that a assert both a denial and an affirmative defense in the alternative. See 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1270 (3d Ed.). But this ability to plead defenses in the alternative does not mean that denials are affirmative defenses, and courts in this District continue to recognize the difference between the two when ruling on Rule 12(f) motions. See, e.g., Electrolux, 2012 WL 1108424, *1.

- 24 -

Act is a proper affirmative defense.  See, e.g., Bausch v. Stryker Corp., 630 F.3d 546, 561 (7th Cir. 2010) (preemption is an affirmative defense).  Moreover, because the defense is based in law, not fact, it is unnecessary to allege facts supporting it.[6]

In sum, we will strike the following affirmative defenses without prejudice: 1, 3-5, 7-8, and 10.  Shield's motion to strike Transhield's affirmative defenses is otherwise denied.

### CONCLUSION

Shield's motion to dismiss Nelson's and Paradigm's counterclaim, and to strike their affirmative defenses, [59] is granted in part and denied in part.  Counts I, VI, and IX are dismissed without prejudice.  Counts V, VII, and VIII are withdrawn.  The motion is denied as to Count IV.  Nelson's and Paradigm's affirmative defenses are stricken without prejudice. However, Shield's motion to strike is denied as to Nelson's and Paradigm's "Lack of Jurisdiction" defense.  Shield's motion to dismiss Vold's counterclaim, and to strike his affirmative defenses, [55] is granted in part and denied in part.  The motion is denied as to Vold's counterclaim, and granted as to Vold's affirmative defenses.  Vold's affirmative defenses are stricken without prejudice.  Shield's motion to dismiss Transhield's counterclaim, and to strike its affirmative defenses, [57] is granted in part and denied in part.  Shield's motion is denied as

---

[6]  We express no opinion on the merits of these affirmative defenses.

- 25 -

to Transhield's counterclaim.  Transhield's following affirmative defenses are stricken without prejudice: 1, 3-5, 7-8, and 10.

Shield's motion is denied as to Transhield's remaining affirmative defenses.  The court will set a date for the defendants to amend their pleadings after it has ruled on the pending motion to dismiss Shield's complaint.[7]

DATE:      September 19, 2011

ENTER:     _____

John F. Grady, United States District Judge

---

[2/]   We expect that the defendants now have sufficient guidance to adequately plead their affirmative defenses.  Unless their amended defenses are patently deficient, the court is likely to deny summarily any further Rule 12(f) motion by Shield as dilatory.