# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHIELD TECHNOLOGIES CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11 C 6183 |
| ) | |
| PARADIGM POSITIONING, LLC, THOMAS ) | |
| W. NELSON, JEFFERY D. VOLD, ) | |
| TRANSHIELD, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is the joint motion to dismiss of defendants Thomas W. Nelson and Paradigm Positioning, Inc. ("Paradigm"). For the reasons explained below, we deny their motion as untimely. However, the court *sua sponte* dismisses the plaintiff's common law fraud claim without prejudice.

## BACKGROUND

Plaintiff Shield Technologies Corporation ("Shield") manufactures and sells corrosion protective covers for the United States and foreign militaries, industry, and consumer gun purchasers. (Am. Compl. ¶ 1.) The United States Department of Defense ("DOD") is Shield's largest customer. (Id. at ¶ 2.) Defendant Transhield manufactures and sells "shrink wrap covers" for a range of applications and it is currently marketing its products to the DOD as an alternative to Shield's products. (Id.

at ¶¶ 3, 5.) Shield, citing Transhield's website, alleges that Transhield's products purport to have "at least some of the same technology and performance characteristics as" Shield's products. (Id. at ¶ 4.) Shield alleges that defendants Nelson and Jeffery Vold, two former Shield executives, have given Shield's confidential information to Transhield and that Transhield is using that information to compete with Shield for the DOD's business. (Id. at ¶¶ 7-10, 15, 27-31, 33.) Shield further asserts that Nelson and Vold are using Paradigm as their alter ego in their dealings with Transhield. (Id. at ¶ 14.) Shield has filed a six-count complaint alleging: (1) breach of certain employment agreements executed by Nelson and Vold (Counts I (Nelson) and II (Vold)); (2) trade secret misappropriation (Count III); (3) tortious interference with a prospective business relationship (Count IV); (4) civil conspiracy (Count V); and (5) common law fraud (Count VI, against Nelson only).

## DISCUSSION

Paradigm and Nelson have jointly filed a motion seeking dismissal pursuant to Rule 12(b)(6) and summary judgment pursuant to Rule 56(a). On June 23, 2012, we denied their motion insofar as it sought summary judgment: discovery is still in the early stages and it would be premature to evaluate the sufficiency of Shield's evidence at this time. However, we directed Shield to respond to the defendants' motion insofar as it was based upon Rule 12(b)(6).

Rather than address the motion's merits, Shield argues that it is untimely because the defendants have already answered the complaint. See Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [including failure to state a claim] must be made before pleading if a responsive pleading is allowed."). Rule 12(h)(2) provides that a party may assert that the complaint fails to state a claim "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). The defendants insist that they raised their Rule 12(b)(6) defense in their answer, a pleading "allowed" under Rule 7(a), citing their allegation that Shield brought its "legal claims with no factual basis and without the minimum level of due diligence." (Nelson/Paradigm Second Am. Answer at 54, ¶ 4a.) If proven, this would be a basis for sanctions under Rule 11, but it is not an attack on the facial sufficiency of Shield's allegations. The defendants next argue that we may consider their motion under Rule 12(c). By its terms, Rule 12(c) applies only after the pleadings are "closed." See Fed. R. Civ. P. 12(c) ("After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."). "Unless the court orders a reply to an answer or third-party answer, the pleadings close after the last of the following pleadings in the case has been filed: answer, reply to a counterclaim, answer to a crossclaim, and third-party answer." 2-12 Moore's Federal Practice

– Civil § 12.38; see also Flora v. Home Federal Sav. and Loan Ass'n, 685 F.2d 209, 211 n.4 (7th Cir. 1982) ("In a case such as this when, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply.").[1] Shield has not yet filed its answer to the defendants' counterclaims.

The defendants contend that Ennenga v. Starns, 677 F.3d 766, 773 (7th Cir. 2012) supports their argument that their motion is timely, but that case dealt with a different issue. The question in Ennenga was whether the defendants could file a motion to dismiss based on a statute-of-limitations defense after failing to raise that defense in a prior Rule 12(b)(6) motion. The Ennenga Court held that they could, observing that such a defense is not subject to Rule 12(h)(1)'s "consolidation requirement." Id.; see also Fed. R. Civ. P. 12(h)(1) (providing that a party waives the defenses listed in Rule 12(b)(2)-(5) — but not Rule 12(b)(6) — by omitting them from a previous motion). Ennenga makes it clear that

---

[1] The defendants cite several cases for the proposition that the pleadings are closed after the defendant files his answer. Some of the cited cases do not address the situation where, as here, the defendant has also filed counterclaims and the plaintiff has not yet filed his response. See Rizzi v. Calumet City, 183 F.R.D. 639, 640-41 (N.D. Ill. 1999) (pleadings not closed because defendant had not yet filed an answer); Maniaci v. Georgetown Univ., 510 F.Supp.2d 50, 60 (D.D.C. 2007) (pleadings closed after defendant filed his answer, but before a court-imposed deadline to amend the complaint had passed). Starmakers Pub. Corp. v. Acme Fast Freight, Inc., 615 F.Supp. 787, 790 (S.D.N.Y. 1985) is closer to our facts. See id. (concluding that an unanswered third-party complaint did not make the defendant's Rule 12(c) motion untimely). But there, the pleadings were closed as between the plaintiff and the moving defendant, leading the court to conclude that the third-party complaint was irrelevant. See id. Here, the pleadings remain open as between Paradigm/Nelson and Shield while the defendants' counterclaim remains unanswered.

the defendants have not waived their right to assert that Shield's complaint fails to state a claim for relief. But that does not mean that their motion is timely.

Based on the foregoing analysis, it appears that the defendants' motion to dismiss is untimely. Although it is unclear whether the Federal Rules compel us to deny the defendants' motion, we think it is the most prudent course. However, we are not persuaded that we cannot still rule on the sufficiency of Shield's complaint at this time. "*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997). It would serve no purpose other than delay to postpone addressing the issues that the defendants raise in their motion while awaiting Shield's response to their counterclaims. Therefore, in the interests of avoiding unnecessary delay, we will deny the defendants' motion as untimely but address their substantive arguments on our own motion.

**A.    Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**B. Claims Governed By Rule 8(a) (Counts I, III, IV, and V)**

Paradigm and Nelson assert in conclusory, boilerplate fashion that Shield's claims for breach of contract (Count I), trade-secret misappropriation (Count III), and tortious interference (Count IV) "do not set forth sufficient facts to meet the 'plausibility' standard for pleading." (See Defs.' Mem. at 23, 24, 25.) The central factual allegation underlying each of these Counts is Shield's contention that Nelson (individually and through Paradigm) is using Shield's confidential information, obtained during his tenure at Shield, to assist Transhield. This core allegation adequately supports Shield's claim that Nelson has breached the confidentiality and non-competition provisions of his contracts with Shield. (See Compl. ¶¶ 39-44 ("Stock Purchase Agreement"); 45-47 ("Employment Agreement"); 48-50 ("Settlement Agreement and

Mutual Release").)  It also suffices to allege "purposeful" or "intentional" interference — i.e., "some impropriety committed by the defendant in interfering with plaintiff's business expectancy," Fidelity Nat. Title Ins. Co. of New York v. Westhaven Properties Partnership, 898 N.E.2d 1051, 1067 (Ill. App. Ct. 2007) — for purposes of Shield's tortious-interference claim.

Turning to Shield's trade-secret misappropriation claim, the defendants argue that the complaint does not sufficiently allege the existence of a trade secret.  See Standard Mut. Ins. Co. v. Mudron, 832 N.E.2d 269, 272-73 (Ill. App. Ct. 2005) ("Establishing a violation of the Trade Secrets Act requires a plaintiff to prove that the information at issue was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business.").  When assessing claims for trade-secret misappropriation under Rule 12(b)(6), courts attempt to strike a balance between the plaintiff's obligation to provide notice of its claim and its interest in preserving secrecy.  See, e.g., Lincoln Park Sav. Bank v. Binetti, No. 10 CV 5083, 2011 WL 249461, *2 (N.D. Ill. Jan. 26, 2011).  As we read the complaint, Shield is claiming trade-secret protection for the following information:

> [C]rucial aspects of the specifications and manufacture of Envelope corrosion preventative covers and all aspects of the business relationship between Shield Technologies and the DOD, including but not limited to the orders placed by the DOD with Shield Technologies, the contacts at the DOD developed by Shield Technologies with whom Shield has negotiated the orders of corrosion preventative covers, the pricing of corrosion preventative covers ordered by the DOD from Shield

> Technologies, and other proprietary and confidential know-how developed by Shield Technologies pertaining to the creation, development, manufacture, and marketing of corrosion preventative covers and the sale of such covers to the DOD.

(Am. Compl. ¶ 33.) Courts have held that comparable allegations were sufficiently detailed to satisfy the plaintiff's obligation to identify its trade secrets. See, e.g., Lincoln Park Sav., 2011 WL 249461, *2 ("Although the complaint is not a model of specificity, LPSB has alleged that defendants had access to its trade secrets, specifically, confidential customer and other information contained in its loan origination system."); Fire 'Em Up, Inc. v. Technocarb Equipment (2004) Ltd., 799 F.Supp.2d 846, 850 (N.D. Ill. 2011) (declining to dismiss a complaint alleging trade-secret protection for information including customer lists, supplier lists, business partner lists, product specifications, financial data, marketing plans, and advertising strategies). Consistent with these cases, we conclude that Shield's allegations, while not as specific as they could be, are sufficient to identify the alleged trade secrets at issue. Finally, the defendants correctly point out that Shield alleges in a conclusory fashion that it has taken steps to maintain the secrecy of its alleged trade secrets. (See Am. Compl. ¶ 37); see also Liebert Corp. v. Mazur, 827 N.E.2d 909, 921 (Ill. App. Ct. 2005) (to establish the existence of a trade secret, the plaintiff must show that it "took affirmative measures to prevent others from acquiring or using the information"). But as we just

discussed, the complaint cites provisions in Shield's agreements with Nelson prohibiting him from disclosing Shield's confidential information. (See, e.g., Am. Compl. ¶ 41.) Courts have held that such provisions "may be considered a reasonable step to maintain secrecy of a trade secret." Dick Corp. v. SNC-Lavalin Constructors, Inc., No. 04 C 1043, 2004 WL 2967556, *10 (N.D. Ill. Nov. 24, 2004) (citing Master Tech Prods. v. Prism Enters., Inc., No. 00-C-4599, 2002 WL 475192, at *5 (N.D. Ill. Mar. 27, 2002)); see also Lincoln Park Sav., 2011 WL 249461, *2.

In sum, we conclude that Shield has stated claims for breach of contract (Count I), tortious interference (Count III), and trade-secret misappropriation (Count IV). The sole basis for the defendants' motion to dismiss Shield's conspiracy claim (Count V) is that it "cannot be proven" because Shield's other claims are deficient. (See Defs.' Mem. at 25.) We have concluded otherwise, therefore we will not dismiss Count V.

**C. Common Law Fraud (Count VI)**

Shield's common law fraud claim is subject to Rule 9(b)'s heightened pleading standard. See Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff satisfies this standard by pleading "the who, what, when, where, and how" of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Shield alleges "on information and belief" that Nelson falsely represented in his agreements with

Shield that he would abide by provisions governing confidential information and post-employment competition. (See Am. Compl. ¶ 82.) First, Shield has not alleged sufficient detail supporting its suspicions to permit it to plead fraud "on information and belief." See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 443 (7th Cir. 2011) (A plaintiff may plead fraud on information and belief only if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions.") (citation and internal quotation marks omitted). Second, Shield has alleged so-called "promissory fraud:" misrepresentations about Nelson's intent to comply with his promises to Shield. See, e.g., Government Payment Service, Inc. v. LexisNexis VitalChek Network, Inc., No. 12 C 1946, 2012 WL 1952905, *7 (N.D. Ill. May 29, 2012) (promissory fraud consists of false statements of intent regarding future conduct rather than false statements of present fact). Generally speaking, promissory fraud is not actionable in Illinois. See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 682 (Ill. 1989) ("[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud."). However, Illinois courts recognize a somewhat nebulous exception for "schemes of promissory fraud." Id.; see also Desnick v. American Broadcasting Companies, Inc., 44 F.3d 1345, 1354 (7th Cir. 1995) (characterizing the

difference between "promissory fraud" and a "scheme of promissory fraud" as elusive). In <u>Desnick</u>, our Court of Appeals summarized the exception as follows: "promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." <u>Desnick</u>, 44 F.3d at 1354. There is nothing "particularly egregious" about the fraud alleged here, and Shield has not identified a larger pattern of deception by Nelson with the particularity that Rule 9(b) requires. Instead, it has merely repackaged its breach-of-contract claim as a claim for fraud. Therefore, we will dismiss Shield's common law fraud claim without prejudice.

## **CONCLUSION**

Nelson's and Paradigm's joint motion to dismiss the plaintiff's complaint is denied as untimely. The court *sua sponte* dismisses the plaintiff's claim for common law fraud (Count V) without prejudice. The plaintiff is given leave to file a second amended complaint by October 17, 2012 that cures the deficiencies we have identified with its fraud claim, if it can do so. If the plaintiff chooses not to file a second amended complaint by that date, we will dismiss its common law fraud claim with prejudice. All defendants shall plead to the second amended complaint, if filed, including any amended counterclaims and affirmative defenses, by October 31, 2012. If no second amended complaint is

filed, the defendants shall file any amended counterclaims and affirmative defenses by October 31, 2012. The plaintiff shall plead to the defendants' counterclaims by November 14, 2012.

DATE: October 3, 2012

ENTER: _/s/ John F. Grady_
John F. Grady, United States District Judge